1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   BLANCA MARGOLIS,                    CASE NO. CV 17-5047 SS

12                    Plaintiff,

13        v.
                                         **MEMORANDUM DECISION AND ORDER**
14   NANCY A. BERRYHILL, Acting
     Commissioner of Social
15   Security,

16                    Defendant.

17

18                              **I.**

19                         **INTRODUCTION**

20

21        Blanca Margolis ("Plaintiff") brings this action pro se,

22   seeking to overturn the decision of the Acting Commissioner of

23   Social Security (the "Commissioner" or "Agency") denying her

24   application for Supplemental Security Income ("SSI").  The parties

25   consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of

26   the undersigned United States Magistrate Judge.  (Dkt. Nos. 9, 12,

27   13). For  the  reasons  stated  below,  the  Court  AFFIRMS  the

28   Commissioner's decision.

## II.

### PROCEDURAL HISTORY

On October 18, 2013, Plaintiff filed an application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act (the "Act") alleging a disability onset date of March 6, 2009.[1]  (AR 65, 141-46).  The Commissioner denied Plaintiff's application initially and on reconsideration.  (AR 53-77).  Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on December 17, 2015.  (AR 33-52, 96-97).  The ALJ issued an adverse decision on January 13, 2016, finding that Plaintiff was not disabled because there were jobs that exist in significant numbers in the national economy that she can perform.  (AR 20-28).  On April 18, 2017, the Appeals Council denied Plaintiff's request for review.  (AR 1-5).  This action followed on July 10, 2017.

## III.

### FACTUAL BACKGROUND

Plaintiff was born on October 6, 1962. (AR 141).  She was fifty-three (53) years old when she appeared before the ALJ on December 17, 2015.  (AR 33).  Plaintiff has a high school education.  (AR 40).  Plaintiff previously worked as a receptionist.  (AR 37).

---

[1]  Plaintiff was represented by counsel before the Agency.  (AR 79).  After the ALJ issued his adverse decision, Plaintiff elected to proceed pro se.  (AR 6).

She alleges disability due to: major depression, anxiety, hyperlipidemia, benign brain tumor, and arthralgia. (AR 162).

## A. __Plaintiff's Statements And Testimony__

In an adult function report dated March 24, 2014, Plaintiff alleged that she is unable to work due to memory loss, blurred vision, anxiety, confusion, loss of equilibrium, seizures, and depression. (AR 209). Her sleep is interrupted due to anxiety. (AR 210). She contends that her impairments affect her ability to bend, stand, reach, walk, talk, climb, concentrate, understand, and follow instructions. (AR 214). She loses balance, forgets easily, and has trouble with her memory. (AR 214). She is unable to handle stress without panicking and "shutting down." (AR 215. Plaintiff is able to care for herself and her dog, run errands, and exercise. (AR 210). She prepares meals, does laundry, cleans her house, watches television, and plays cards. (AR 211, 213). She walks and drives and is able to shop for groceries. (AR 212). In a letter dated September 15, 2015, Plaintiff alleged symptoms including seizures, fainting spells, migraines, impaired speech, "unable to function," memory loss, visual hallucinations, depression, and anxiety. (AR 254).

Plaintiff testified that she is unable to work due to her depression, anxiety, dizziness, memory loss, and an inability to focus and concentrate. (AR 37, 40). She is able to drive but stays off of freeways because of her anxiety and pulls over when she starts to feel dizzy. (AR 38-39, 41). Plaintiff experiences

periodic crying spells, which last from one to three hours. (AR 42). A couple times a month her anxiety and depression are so bad that she stays in bed all day. (AR 43-44). Once or twice a month, Plaintiff experiences migraine headaches where she loses vision for up to twenty minutes. (AR 44).

**B.** **Treatment History**

In February 2009, Plaintiff had a large right posterior tempoparietal meningioma resected after presenting with seizures and migraines. (AR 282). A year later, Plaintiff reported no seizures or migraines but complained of lightheadedness with walking. (AR 282). An MRI found no evidence of recurrence of the right parietal meningioma and no significant residual neurological deficiencies. (AR 284). In May 2012, a small left parietal meningioma was stable and unchanged. (AR 268).

In October 2013, Plaintiff's conditions were stable with medication. (AR 665-67). No functional deficiencies were reported or observed. (AR 665-67). In December 2013, Plaintiff presented with no physical, mental, or neurological problems, requesting pain and anxiety medications and a disability recommendation. (AR 318, 662). However, she denied any current pain. (AR 322, 325). A physical examination was unremarkable. (AR 663). A neurological examination found that Plaintiff's memory was intact. (AR 663). On a psychiatric examination, Plaintiff was fully oriented, with normal insight and judgment, and appropriate mood and affect. (AR 663).

On January 27, 2014, Plaintiff reported a head injury after being hit by her boyfriend. (AR 305, 308). A CT image revealed a subgaleal hematoma. (AR 313). She was evaluated by Scott C. Lederhaus, M.D., a neurosurgeon, who found no neurological or motor function abnormalities on examination and concluded that the CT image showed no active bleed. (AR 300-01). Plaintiff was discharged home on January 28, with no significant recommendations for follow-up treatment. (AR 300-04).

In February and March 2014, physical, neurological, and psychiatric examinations were unremarkable. (AR 650-61). Plaintiff reported a pain level of 0/10. (AR 656). She initially complained of having multiple migraines per day, but she later "changed her story," stating only one migraine every week or so. (AR 652). Plaintiff's treating physician noted that her "story does not make sense." (AR 656). While Plaintiff reported that she has "oncology, neuro, and neurosurgeon following her," the treating physician found no such records in the system. (AR 656). The physician concluded that Plaintiff does not have any cognitive deficits. (AR 656). An April 2014 MRI indicated an encephalomalacia in the parieto occipital region on the right consistent with postsurgical encephalomalacia. (AR 446). Physical, neurological, and psychiatric examinations in April and May 2014 were unremarkable, with Plaintiff continuing to report a pain level of 0/10 at each examination. (AR 470-78).

On May 18, 2014, Norma R. Aguilar, M.D., reviewed the medical records and performed a complete psychiatric evaluation on behalf

of the Agency. (AR 461-65). Plaintiff presented appropriately dressed and groomed. (AR 461). Her posture and gait were normal. (AR 461). She denied substance abuse but admitted a history of arrests and incarceration. (AR 463). Plaintiff's chief complaints were depression and anxiety, along with concentration and memory problems. (AR 461). She reported always feeling tense, pressured, hopeless, unmotivated, and overwhelmed. (AR 462). She has trouble focusing and her long term memory is poor. (AR 462). Plaintiff denied any paranoia, delusions, hallucinations, or suicidal or homicidal ideations. (AR 462). She was currently taking Abilify, Prozac, Alprazolam, and Lorazepam, which have been somewhat helpful in mitigating her symptoms. (AR 462). Plaintiff reported engaging in daily activities, including self-care, pet care, housework, errands, and social and leisure activities. (AR 463). She has a fair relationship with friends and family. (AR 463).

A mental status examination was largely unremarkable. (AR 463-64). Plaintiff's appearance, attitude, behavior, speech, thought processes, thought content, perceptions, orientation, concentration, calculation, fund of information and intelligence, insight, and judgment were all normal and intact. (AR 463-64). Plaintiff's mood was slightly depressed, her affect slightly constricted, and she was able to recall two of three objects after five minutes. (AR 463-64). Dr. Aguilar diagnosed dysthymic disorder and assigned a Global Assessment of Functioning ("GAF") score of 65-70.[2] (AR 464). She concluded that Plaintiff would

---

[2] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect

have mild difficulty responding to work pressures, but has no other mental, work-related, functional limitations.  (AR 465).

In July 2014, EEG findings were assessed as normal.  (AR 895). In September 2014, Plaintiff complained of experiencing dizziness over the prior six months.  (AR 555).  A physical examination was unremarkable.  (AR 555-57).  An MRI noted meningiomas but was negative for any issues related to her internal auditory canal. (AR 547, 561-62).  In October 2014, Plaintiff reported that her headaches are controlled with Norco.  (AR 891).  She was assessed as neurologically normal.  (AR 891).

In January 2015, Plaintiff was evaluated by Sam Mouazzen, M.D., a cardiologist.  (AR 551-52).  Plaintiff complained of heart palpitations and lack of energy but denied chest pain, syncope, or dyspnea.  (AR 551).  A cardiac examination and functional testing were unremarkable.  (AR 552).  In March 2015, a treadmill test was "basically unremarkable."  (AR 548).  While Plaintiff complained

the individual's need for treatment." Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).  The GAF includes a scale ranging from 0-100, and indicates a "clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) (hereinafter DSM-IV).  According to DSM-IV, a GAF score between 61 and 70 indicates some mild symptoms (e.g., depressed mood and mild insomnia or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within household), but generally functioning well, has some meaningful interpersonal relationships.  Id. 34. "Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability (or interact with physical impairments to create a disability), they may be a useful measurement." Garrison v. Colvin, 759 F.3d 995, 1003 n.4 (9th Cir. 2014).

of ear pain in February, April, May, September, October, and November 2015, physical and neurological examinations were largely unremarkable. (AR 556-71, 847-72). The May and November examinations also included psychiatric evaluations, which were also unremarkable, and Plaintiff reported a pain level of 0/10 at each visit. (AR 850, 853, 859, 861, 867, 870). Indeed, in periodic pain evaluations from April 2011 through November 2015, Plaintiff generally reported a pain level of 0/10, except for a few, minor exceptions. (AR 869-70) (indicating thirty-six occasions out of over forty visits where Plaintiff reported a pain level of 0/10).

On August 19, 2015, Plaintiff's treating mental health professionals noted that Plaintiff had been diagnosed with major depressive disorder and that her symptoms include deficient drive and energy, feeling ineffective and helpless, isolation, alienating thoughts, somatic symptoms, and mental dullness. (AR 553). Plaintiff denied any hallucinations or delusions. (AR 553). The psychologists reported that Plaintiff "scored high" on unusual thought processes and problems with social detachment, distractibility, lack of purpose or initiative, strange sensations, and odd interpretations of her environment. (AR 553).

In August 2015, Plaintiff's treating physician reported that Plaintiff's chief medical problems are a small meningioma, requiring only annual, routine checkups, and depression and anxiety, which are being treated by her psychiatrist. (AR 582). Contemporaneous correspondence by Sina Safahieh, M.D., Plaintiff's psychiatrist, indicated that Plaintiff has been diagnosed with

major depressive disorder, severe and recurrent.  (AR 726).  Dr. Safahieh reported that Plaintiff is medication compliant and attends weekly psychotherapy.  (AR 726).  Plaintiff's symptoms have "marginally resolved and she continues to have disability due to the severity of her medical condition and multiple bio-psychosocial stressors."  (AR 726).  On December 28, 2015, Dr. Safahieh reported that Plaintiff is currently prescribed Lexapro, Artane, and Gabapentin.  (AR 901).  Plaintiff psychosis has "resolved" but she continues to have "significant anxiety and depression" exacerbated by medical, social, and financial stressors.  (AR 901).

## C.    State Agency Consultants

On May 29, 2014, Edward Layne, M.D., a State agency consultant, reviewed the medical record and opined that Plaintiff has no severe physical impairment.  (AR 59-60).  Dr. Layne noted that Plaintiff had a benign brain tumor resected in 2009, minimal follow-up with a small recurrent tumor but no symptoms, no seizure disorder documented, multiple normal examinations, and a small residual tumor and an area of encephalomalacia in a recent MRI consistent with her surgery and a CT scan.  (AR 59).  On September 9, 2014, L.C. Chiang, M.D., another State agency consultant, reviewed the updated medical record and concurred with Dr. Layne's assessment.  (AR 73).  Dr. Chiang found that Plaintiff's most recent examination indicated normal range of motion, normal muscle strength, stability in all extremities with no pain, and intact memory.  (AR 73).  He noted that Plaintiff continues to have a stable hematoma with no functional deficits.  (AR 73).

On May 30, 2014, Evelyn Adamo, Ph.D., a State agency consultant, reviewed the medical record and opined that Plaintiff has no severe mental impairment. (AR 60). Dr. Adamo noted that Plaintiff has no history of psychiatric care, takes psychotropic medications prescribed by her primary care physician with reported benefits, is independent in activities of daily living, and has fair interpersonal relationships. (AR 60). She opined that Plaintiff's dysthymic disorder causes no more than minimal functional limitations and is therefore nonsevere. (AR 60). On September 19, 2014, Barbara Moura, Psy.D., another State agency consultant, reviewed the updated medical record and concurred with Dr. Adamo's assessment. (AR 73-74). Dr. Moura found that Plaintiff's mental condition has not worsened and her treating source mental status examinations are benign, and concluded that Plaintiff retains the ability to perform daily activities. (AR 73).

## IV.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful

10

employment that exists in the national economy.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are:

(1)  Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)  Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)  Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)  Is the claimant capable of performing his past work? If so, the claimant is found not disabled.  If not, proceed to step five.

(5)  Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

*Tackett*, 180 F.3d at 1098-99; *see also* Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert ("VE"). Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## V.

### THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Act. (AR 28). At step one, the ALJ found that Plaintiff

has not engaged in substantial gainful activity since October 13, 2013, the application date. (AR 22). At step two, the ALJ found that Plaintiff's status post right temporal parietal craniotomy with postsurgical changes, small extra axial mass along the left anterior frontal convexity suggestive of a meningioma, minimal scattered hyperintense T2 subcortical white matter lesions suggestive of minimal to early chronic ischemic micro vascular disease, seizure disorder, new benign tumors, anxiety, depression, dizziness, and migraine headaches are severe impairments. (AR 22). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (AR 22-23).

The ALJ then assessed Plaintiff's RFC and concluded she can perform light work, as defined in 20 C.F.R. § 416.967(b),[3] except:

> [Plaintiff] can sit or stand/walk up to eight hours in
> and [*sic*] eight-hour workday; can climb stairs but not
> ladders, ropes or scaffolds; is precluded from work at
> unprotected heights, around dangerous moving machinery,
> or around open bodies of water; and is limited to the

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b).

performance of simple tasks (defined as having a
reasoning level of three or less).

(AR 23). At step four, the ALJ found that Plaintiff is unable to
perform any past relevant work. (AR 26). Based on Plaintiff's
RFC, age, education, work experience, and the VE's testimony, the
ALJ determined at step five that there are jobs that exist in
significant numbers in the national economy that Plaintiff can
perform, including office helper and small products assembler. (AR
26-28). Accordingly, the ALJ found that Plaintiff has not been
under a disability, as defined by the Act, since October 18, 2013,
the application date. (AR 28).

## VI.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the
Commissioner's decision to deny benefits. "[The] court may set
aside the Commissioner's denial of benefits when the ALJ's findings
are based on legal error or are not supported by substantial
evidence in the record as a whole." Aukland v. Massanari, 257 F.3d
1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); see
also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing
Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than
a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v.
Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant

evidence which a reasonable person might accept as adequate to support a conclusion." (Id.). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

**VII.**

**DISCUSSION**

Plaintiff raises four claims for relief: (1) the ALJ failed to properly evaluate all of the medical evidence; (2) the ALJ failed to properly consider her subjective complaints; (3) the consultative examiner and the ALJ were biased against Plaintiff; and (4) remand is required to consider additional evidence. (Dkt. Nos. 21, 24). The Court addresses each claim in turn.

**A.   The ALJ Properly Evaluated All Of The Medical Evidence**

The ALJ found that Plaintiff's status post right temporal parietal craniotomy with postsurgical changes, small extra axial mass along the left anterior frontal convexity suggestive of a meningioma, minimal scattered hyperintense T2 subcortical white

matter lesions suggestive of minimal to early chronic ischemic micro vascular disease, seizure disorder, new benign tumors, anxiety, depression, dizziness, and migraine headaches are severe impairments. (AR 22). After considering the record, he determined that Plaintiff retains the RFC to perform light work but cannot climb ladders, ropes or scaffolds; is precluded from work at unprotected heights, around dangerous moving machinery, or around open bodies of water; and is limited to the performance of simple tasks. (AR 23).

"A claimant's residual functional capacity is what he can still do despite his physical, mental, nonexertional, and other limitations." Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989) (citing 20 C.F.R. § 404.1545). An RFC assessment requires the ALJ to consider a claimant's impairments and any related symptoms that may "cause physical and mental limitations that affect what [he] can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In determining a claimant's RFC, the ALJ considers all relevant evidence, including residual functional capacity assessments made by consultative examiners, State agency physicians and medical experts. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); see also id. §§ 404.1513(c), 416.913(c). Further, "it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001); see 20 C.F.R. §§ 404.1546(c) ("[T]he administrative law judge . . . is responsible for assessing your residual functional capacity."), 416.946(c) (same).

The ALJ's RFC determination is supported by substantial evidence. Subsequent to Plaintiff's 2009 surgery for resection of a large meningioma, records indicate no evidence of recurrence and reflect no significant residual neurological deficiencies. (AR 282, 284, 665-67). A small left meningioma has been identified but it remains stable and unchanged. (AR 268, 446, 547, 561-62). Throughout the relevant time period, neurological examinations have been normal and unremarkable. (AR 300-04, 318, 556-71, 470-78, 650-61, 662, 663, 891). In January 2015, a cardiac examination and functional testing were unremarkable. (AR 552). A March 2015 treadmill test was "basically unremarkable." (AR 548).

Similarly, the ALJ found that primary care records subsequent to Plaintiff's application date "reflect general stability of all conditions with conservative medication, and document no significant reports or observations of functional limitations." (AR 24). Physical examinations have been normal and unremarkable, with no seizure disorder documented. (AR 470-78, 555-71, 663, 650-61, 847-72). In May 2014, Plaintiff had normal range of motion, normal muscle strength, and stability in all extremities without pain. (AR 475). Plaintiff's treating physicians largely controlled her physical impairments with conservative medication, and she invariably reported a pain level of 0/10. (AR 322, 470-78, 850, 853, 859, 861, 867, 869-70). In August 2015, Plaintiff's primary care physician stated that her only physical problem is a small meningioma, which requires only annual, routine checkups. (AR 582).

Plaintiff's mental impairments were primarily diagnosed and treated with psychotropic medications by her primary care physician, with reported benefits. (AR 462, 470-78, 650-63, 850-70). Psychiatric examinations were normal and unremarkable: Plaintiff was fully oriented, with normal insight and judgment, and appropriate mood and affect. (AR 470-78, 556-71, 650-61, 663, 847-72). The consultative examiner's psychiatric evaluation was unremarkable. While Plaintiff's mood was slightly depressed, her affect slightly constricted and her memory slightly impaired, her appearance, attitude, behavior, speech, thought processes, thought content, perceptions, orientation, concentration, calculation, fund of information and intelligence, insight, and judgment were all normal and intact. (AR 463-64). Dr. Aguilar opined that Plaintiff would have a mild difficulty in responding to work pressures, but otherwise has no work-related, mental functional limitations. (AR 465). The record contains correspondence in August and December 2015 from Plaintiff's treating mental health professionals, stating that Plaintiff has been diagnosed with major depressive disorder and summarizing some of her symptoms, including low energy and decreased concentration. (AR 553, 726, 901). Dr. Safahieh concluded that Plaintiff's psychosis has been "resolved" with medications, but that she continues to have significant anxiety and depression. (AR 901). However, no treating records have been submitted and the physicians did not assess any specific, work-related functional limitations, as the ALJ noted. (AR 25-26, 553, 726, 901). It is the claimant's burden to furnish medical and other evidence that the Agency can use to reach conclusions

about her medical impairments. 20 C.F.R. §§ 404.1512(a), 416.912(a).

Thus, based on his review of the evidence, the ALJ properly concluded that the medical records indicate a "general stability of [Plaintiff's] physical condition and reflect inconsistent and routine care for temporary minor maladies." (AR 25). Plaintiff's "physical examinations have consistently shown minimal physical abnormality or functional deficiency, and treatment providers have not assessed any specific functional restrictions." (AR 25-26). Similarly, Plaintiff's mental health records reflect "overall stability with no clear indication of significant work-related functional restriction." (AR 26). Accordingly, after also considering Plaintiff's subjective complaints, which the ALJ found partially credible, the ALJ determined that Plaintiff can perform a range of light work, limited to simple tasks. (AR 23, 25-26).

Plaintiff does not identify any medical evidence during the relevant period, October 2013 through January 2016, hat the ALJ failed to consider. Instead, she appears to contend that the lack of a medical opinion from a treating provider should not serve as grounds to deny her disability claim. (Dkt. No. 21 at 1). However, the ALJ merely noted that the record lacks an opinion from a treating provider containing specific functional limitations and that the only such opinions were from the consultative examiner and the State agency consultants. (AR 25-26). The ALJ acknowledged that Plaintiff has multiple severe impairments. (AR 22). However, "[t]he mere existence of an impairment is insufficient proof of a

disability." Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993); see Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985) ("The mere diagnosis of an impairment . . . is not sufficient to sustain a finding of disability."); accord Lundell v. Colvin, 553 F. App'x 681, 684 (9th Cir. 2014). While Plaintiff may interpret the medical record differently, "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). As the Court cannot conclude that the ALJ's interpretation of the medical record was irrational, the ALJ's decision must be upheld.

Plaintiff also appears to challenge Dr. Aguilar's examination and opinion, based in part on the amount of time Dr. Aguilar spent with her, and the ALJ's reliance on the opinion. (Dkt. No. 21 at 8-10). However, as Dr. Aguilar performed her own, independent clinical testing and based her findings on the results of those tests, which Plaintiff does not challenge, her opinion constitutes substantial evidence that the ALJ must consider. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) ("[The consultative examiner's] opinion alone constitutes substantial evidence, because it rests on his own independent examination of [the claimant]."). Further, despite Dr. Aguilar's opinion that Plaintiff has only a mild limitation in her ability to respond to work pressures, the ALJ limited Plaintiff to only simple tasks after considering her subjective complaints. (AR 23, 25-26; see id. 465).

The RFC assessment requires the ALJ to consider the medical evidence and determine the functional limitations that affect what the claimant can do in a work setting. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Further, it is the ALJ's sole responsibility to determine the RFC. Vertigan, 260 F.3d at 1049; see also Tommasetti v. Astrue, 533 F.3d 1035, 1041-42 (9th Cir. 2008) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.") (citation omitted). Considering the record as a whole, the ALJ reasonably found that Plaintiff can perform a range of light work, limited to simple tasks. (AR 23). See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174-76 (9th Cir. 2008) (ALJ is responsible for translating claimant's impairments into work-related functions and determining RFC). Thus, because the ALJ's RFC assessment is supported by substantial evidence, no remand is required.

**B.** **The ALJ's Reasons for Discrediting Plaintiff's Subjective Symptom Testimony Were Specific, Clear and Convincing**

Plaintiff asserted that she is unable to work due to memory loss, blurred vision, anxiety, confusion, loss of equilibrium, seizures, and depression. (AR 209). She alleged symptoms including seizures, fainting spells, migraines, impaired speech, "unable to function," memory loss, visual hallucinations, depression, and anxiety. (AR 254). Plaintiff testified that she is unable to work due to her depression, anxiety, dizziness, memory loss, and an inability to focus and concentrate. (AR 37, 40).

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. Trevizo v. Berryhill, 874 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014). "In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. (emphasis in original) (citation omitted). "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Id. (citation omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. Trevizo, 874 F.3d at 678 (citation omitted); see also Smolen, 80 F.3d at 1284 ("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). "This is not an easy requirement to meet: The clear and convincing

standard is the most demanding required in Social Security cases."
_Garrison_, 759 F.3d at 1015 (citation omitted).

In discrediting the claimant's subjective symptom testimony, the ALJ may consider the following:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

_Ghanim v. Colvin_, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. _Burrell v. Colvin_, 775 F.3d 1133, 1137 (9th Cir. 2014); _Light v. Soc. Sec. Admin._, 119 F.3d 789, 792 (9th Cir. 1997). In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms. _Smolen_, 80 F.3d at 1284; _accord_ _Burrell_, 775 F.3d at 1137. However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented. _Bray v. Comm'r of Soc. Sec. Admin._, 554 F.3d 1219, 1227 (9th Cir. 2009) (citation omitted).

Further, the ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti, 533 F.3d at 1039 (citation omitted); see Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.") (citation omitted). Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ found that Plaintiff's severe impairments cause some limitations in her ability to perform work activity but do not preclude all basic work activity, as Plaintiff alleged. (AR 23-26). The ALJ provided specific, clear, and convincing reasons, supported by evidence in the record, to find Plaintiff's complaints of disabling physical and mental symptomology only partially credible. (AR 26). These reasons are sufficient to support the Commissioner's decision.

First, the ALJ found that Plaintiff's allegations of disabling symptoms are inconsistent with the objective medical record, which indicates that Plaintiff's impairments have been stabilized with little functional deficits. (AR 25-26). "Contradiction with the

medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008). While inconsistencies with the objective medical evidence cannot be the sole ground for rejecting a claimant's subjective testimony, it is a factor that the ALJ may consider when evaluating credibility. Bray, 554 F.3d at 1227; Burch, 400 F.3d at 681; Rollins, 261 F.3d at 857; see SSR 16-3p, at *5 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities"). As discussed above, physical examinations and diagnostic tests have been normal and unremarkable. (AR 268, 446, 470-78, 547, 548, 552, 555-71, 561-62, 663, 650-61, 847-72). Throughout the relevant time period, neurological examinations have also been normal and unremarkable. (AR 300-04, 318, 556-71, 470-78, 650-61, 662, 663, 891). Plaintiff's treating physicians largely controlled her physical impairments with conservative medication, and she invariably reported a pain level of 0/10. (AR 322, 470-78, 850, 853, 859, 861, 867, 869-70). Plaintiff's mental impairments were primarily diagnosed and treated with psychotropic medications by her primary care physician, with reported benefits. (AR 462, 470-78, 650-63, 850-70). Psychiatric examinations were generally unremarkable: Plaintiff was fully oriented, with normal insight and judgment, and appropriate mood and affect. (AR 470-78, 556-71, 650-61, 663, 847-72). The consultative examiner found that while Plaintiff's mood was slightly depressed, her affect slightly constricted and her memory slightly impaired, her appearance, attitude, behavior,

speech, thought processes, thought content, perceptions, orientation, concentration, calculation, fund of information and intelligence, insight, and judgment were all normal and intact. (AR 463-64). "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [the ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." SSR 16-3p, at *8.

Second, the ALJ found that Plaintiff's allegations of disabling systems are inconsistent with her reported and demonstrated functional abilities. (AR 26). As the ALJ noted, Plaintiff's physical and mental status examinations have consistently shown minimal abnormality or functional deficiency, and no treatment providers have assessed any functional limitations from Plaintiff's impairments. (AR 25-26). For example, in May 2014, Plaintiff had normal range of motion, normal muscle strength, and stability in all extremities without pain. (AR 475). In August 2015, Plaintiff's primary care physician stated that her only physical problem is a small meningioma, which requires only annual, routine checkups. (AR 582). In December 2015, Plaintiff's psychiatrist concluded that Plaintiff's psychosis has been "resolved" with medications and did not assess any functional limitations from Plaintiff's anxiety and depression. (AR 901).

Third, the ALJ noted that Plaintiff's alleged disabling limitations are belied by her reported activities of daily living. (AR 24, 26). "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison, 759 F.3d at 1016; see Burrell, 775 F.3d at 1137 ("Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination."). Nevertheless, an ALJ properly may consider the claimant's daily activities in weighing credibility. Tommasetti, 533 F.3d at 1039. If a claimant's level of activity is inconsistent with the claimant's asserted limitations, it has a bearing on credibility. Garrison, 759 F.3d at 1016; . While Plaintiff alleged that her impairments affect her ability to bend, stand, reach, walk, talk, climb, concentrate, understand, and follow instructions, she acknowledged being able to care for herself and her dog, run errands, and exercise. (AR 210, 214). She prepares meals, does laundry, cleans her house, watches television, and plays cards. (AR 211, 213). She walks and drives and is able to shop for groceries. (AR 212). Everyday activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012).

Furthermore, the ALJ did not completely reject Plaintiff's subjective statements. Instead, the ALJ gave Plaintiff "the benefit of the doubt to [her] subjectively-alleged difficulties where they were supported by her diagnoses and are not inconsistent with objective observations and [Plaintiff's] reported/demonstrated functional abilities." (AR 26). Because the State agency consultants did not have the benefit of hearing Plaintiff's administrative hearing testimony, the ALJ gave "limited weight" to their opinions. (AR 26). Indeed, while the State agency consultants opined that Plaintiff has no severe impairments and no functional deficits, the ALJ found that Plaintiff's status post right temporal parietal craniotomy with postsurgical changes, small extra axial mass along the left anterior frontal convexity suggestive of a meningioma, minimal scattered hyperintense T2 subcortical white matter lesions suggestive of minimal to early chronic ischemic micro vascular disease, seizure disorder, new benign tumors, anxiety, depression, dizziness, and migraine headaches are all severe impairments, and he restricted Plaintiff to a limited range of light work. (Compare AR 59-60, 73-74, with id. 22-23). Similarly, while the consultative examiner, whose opinion the ALJ gave "substantial weight," opined that Plaintiff was only mildly limited in her ability to respond to work pressures, the ALJ gave Plaintiff's testimony the "benefit of the doubt," and limited her to the performance of simple tasks. (Compare AR 465, with id. 23, 26).

In sum, the ALJ offered clear and convincing reasons, supported by substantial evidence in the record, for his adverse

credibility findings.  Accordingly, because substantial evidence supports the ALJ's assessment of Plaintiff's credibility, no remand is required.

## C.    The Additional Evidence Submitted By Plaintiff Is Not New And Material

Plaintiff submitted several exhibits with her memoranda, including a document with her subjective complaints, police reports, documents already in the record, and records dated subsequent to the ALJ's decision.  (Dkt. No. 21, Exs. A-J).  These documents would not change the ALJ's decision, and therefore do not warrant remand.

The Court may remand a matter to the Commissioner if there is new evidence which is "material" to a determination of disability and Plaintiff shows "good cause" for having failed to produce that evidence earlier.  42 U.S.C. § 405(g).  To be material, the new evidence must bear "directly and substantially on the matter" at issue, and there must be a "reasonable possibility that the new evidence would have changed the outcome of the administrative hearing."  Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001); see Booz v. Sec'y of Health & Human Servs., 734 F.2d 1378, 1380-81 (9th Cir. 1984).  The "good cause" requirement is satisfied if new information surfaces after the Commissioner's final decision and the claimant could not have obtained that evidence at the time of the administrative proceeding.  Key, 754 F.2d at 1551.  A claimant does not meet the good cause requirement by merely obtaining a more

favorable report once his claim has been denied.  To demonstrate good cause, the claimant must demonstrate that the new evidence was unavailable earlier.  Mayes, 276 F.3d at 463.

The documents submitted by Plaintiff are not new and material and would not change the ALJ's decision.  Exhibits B through E include a Plaintiff-prepared timeline of traumatic events in her life as well as police reports that purport to support her claim of additional injuries and symptoms not considered by the ALJ. (Dkt. No. 21 at 3 & Exs. B-E).  However, these documents do not contain medical evidence that would support any work-related functional limitations beyond those already included in the ALJ's RFC assessment.  Further, one of the police reports was prepared in May 2006 (id. Ex. C), over seven years prior to Plaintiff's application for benefits, and therefore has little to no probative value, even if it included any relevant medical evidence.  Another police report relates to the January 2014 assault by her boyfriend. (Id. Ex. E).  However, the medical reports related to this incident are already a part of the administrative record, which the ALJ considered.  (AR 24, 286-315).  As the ALJ noted, while a CT image of Plaintiff's brain revealed a subgaleal hematoma, an evaluation by a neurosurgeon found no neurological or motor function abnormalities on examination and concluded that the CT image showed no active bleed.  (AR 24, 300-01, 313).  Plaintiff was discharged from the hospital on January 28, 2014, with no significant recommendations for follow-up treatment.  (AR 24, 300-04).

Similarly, Exhibits G and H do not provide any additional medical evidence regarding Plaintiff's ability to perform work-related functions. Exhibit G includes a February 2014 narcotic pain-relief agreement and form indicating she refused treatment in March 2014. (Dkt. No. 21, Ex. G). However, these documents do not provide any additional information related either to Plaintiff's treatment or her symptoms. (Id.). Further, the administrative record indicates that during over forty visits to Plaintiff's treating physicians between April 2011 and August 2015, she reported a pain level of 0/10 on thirty-six occasions. (AR 869-70). Exhibit H is a copy of Dr. Aguilar's psychiatric evaluation, which is already in the record. (Compare Dkt. No. 21, Ex. G, with id. AR 461-65).

Finally, Plaintiff submitted several medical documents that postdate the ALJ's decision, some by over two years. (Dkt. No. 21, Exs. A, F, I, J). The ALJ's decision closed the period under review on January 13, 2016. (AR 28). Thus, this new evidence indicates, at most, mental deterioration after Plaintiff's hearing, which would be material to a new application but is not probative of her functional limitations prior to January 2016. See Sanchez v. Sec'y of Health & Human Servs., 812 F.2d 509, 512 (9th Cir. 1987) ("The new evidence indicates, at most, mental deterioration after the hearing, which would be material to a new application, but not probative of his condition at the hearing."); Kimbrough v. Shalala, 39 F.3d 1187 (9th Cir. 1994) ("The new evidence indicates only the status of Kimbrough's medical condition [after the relevant time period], and as such, it is irrelevant."); Smith v.

<u>Massanari</u>, 32 F. App'x 342, 343 (9th Cir. 2002) ("The evidence relates to Smith's condition after the disability hearing, and is therefore not material to her condition at the time of the hearing."); <u>see also</u> <u>Grey v. Barnhart</u>, 123 F. App'x 778, 780 (9th Cir. 2005) (the claimant "can file a new application for benefits based on evidence of an impairment that post-dates the agency's final decision in this matter").

In sum, because the exhibits submitted by Plaintiff are not new and material, no remand is required.

**D.   Plaintiff Has Not Demonstrated Any Bias By The Consultative Examiner Or The ALJ**

Plaintiff appears to argue that the consultative examiner was biased against her. (Dkt. No. 21 at 2, 8-10; Dkt. No. 24 at 2-3). Plaintiff complains that Dr. Aguilar spent only ten to fifteen minutes with her, failed to provide a full description or diagnosis, and misconstrued some of Plaintiff's medical and demographic history. (<u>Id.</u>). For example, Plaintiff contends that she has <u>low</u> blood pressure, not <u>high</u> blood pressure as indicated in Dr. Aguilar's report. (Dkt. No. 21 at 9 & Ex. H). Similarly, while Dr. Aguilar indicated that Plaintiff currently suffers from seizures, Plaintiff contends that her seizures stopped after her 2009 surgery.[4] (<u>Id.</u>). However, Plaintiff does not demonstrate how

---

[4]   However, in written statements supporting her application for disability, dated in March 2014 and September 2015, Plaintiff asserted that her symptoms include seizures. (AR 209, 254).

any of these alleged shortcomings undermine the accuracy of the clinical tests and examination performed by Dr. Aguilar, which form the basis of her opinion. Tonapetyan, 242 F.3d at 1149 ("[The consultative examiner's] opinion alone constitutes substantial evidence, because it rests on his own independent examination of [the claimant]."). Further, despite Dr. Aguilar's opinion that Plaintiff has only a mild limitation in her ability to respond to work pressures, the ALJ gave Plaintiff's subjective symptoms statements the "benefit of the doubt" and limited her to only simple tasks. (AR 23, 25-26; see id. 465).

Plaintiff also appears to argue that the ALJ was biased against her, based on her attorney's contention that the ALJ denies a high percentage of disability cases. (Dkt. No. 24 at 1-2). ALJs are "presumed to be unbiased." Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). This presumption can be rebutted "by a showing of conflict of interest or some other specific reason for disqualification." Rollins, 261 F.3d at 857-58 (citation omitted). In order to demonstrate bias, Plaintiff must demonstrate that "the ALJ's behavior, in the context of the whole case, was 'so extreme as to display clear inability to render fair judgment.' " Id. at 858 (quoting Liteky v. United States, 510 U.S. 540, 551 (1994)). Further, Plaintiff carries a "high burden" to demonstrate that the ALJ was biased against her. Leazenby v. Colvin, 654 F. App'x 301, 302 (9th Cir. 2016).

Plaintiff has not met this "high burden." Merely citing the ALJ's rate for denials does not demonstrate any specific basis for

establishing the ALJ's bias against <u>Plaintiff</u>. To the contrary, neither the hearing transcript nor the ALJ's decision indicates any bias by the ALJ against Plaintiff. The hearing was conducted in a professional, courteous manner. (AR 33-52). Further, despite the State agency consultants' opinions that Plaintiff has <u>no</u> severe impairments and <u>no</u> functional deficits and Dr. Aguilar's opinion finding only a <u>mild</u> difficulty responding to work pressures, the ALJ gave Plaintiff's subjective statements the "benefit of the doubt" and found that Plaintiff has multiple severe impairments and is restricted to a limited range of light work. (<u>Compare</u> AR 59-60, 73-74, 465, <u>with</u> <u>id.</u> 22-23, 26). In sum, because Plaintiff has not demonstrated any bias by either the consultative examiner or the ALJ, no remand is required.

**VIII.**

**CONCLUSION**

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner. The Clerk of the Court shall serve copies of this Order and the Judgment on Plaintiff and counsel for Defendant.

DATED: June 22, 2018

/S/
_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

34

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS OR ANY OTHER LEGAL DATABASE.**